## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANTONIO ALVAREZ-ESPINA    *
     *
    Plaintiff        *
     *
v.                    *      **Civil No. 04-1593(SEC)**
     *
GASOLINAS DE PUERTO RICO    *
CORPORATION           *
     *
    Defendant       *
*********************************

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Docket # 65), Plaintiff's opposition thereto (Docket # 107), and Defendant's reply (Docket # 110). After reviewing the parties' filings, the evidence in the record, and the applicable law, Defendant's Motion for Summary Judgment (Docket # 65) is hereby **GRANTED**.

### Standard of Review

Fed. R. Civ. P. 56(b) provides that: "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d

_____

46, 48 (1st Cir. 1990) (citations omitted).  "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting, Garside, 895 F.2d at 48 (1st Cir. 1990)).  By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted).  Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id (citations omitted).

     In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See, Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing, Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  "Once the moving party for summary judgment has established that there is an absence of material facts in dispute, and that the law applicable to those facts sustains the granting of that remedy, the party opposing summary judgment must 'present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005)(internal quotations omitted).

### Procedural Background

     Plaintiff Antonio Alvarez-Espina (hereinafter "Alvarez-Espina") filed the complaint against Gasolinas de Puerto Rico Corporation, now Total Petroleum Puerto Rico Corp. (hereinafter "TPPR"), on June 22, 2004. Docket # 1.  On the same date, Alvarez-Espina filed a Motion for Preliminary Injunction. Docket # 2. TPPR filed an opposition to the motion for

_____

a preliminary injunction along with a motion to dismiss the complaint.  Docket # 12.  The Court denied the Motion for Preliminary Injunction on October 18, 2004. Docket  # 28. Alvarez-Espina responded to the motion to dismiss on August 24, 2004 (Docket # 16), then TPPR replied to Alvarez-Espina's response (Docket # 22), and Alvarez-Espina's surreply followed soon after (Docket # 31).  Plaintiff's Motion to Dismiss was denied on June 22, 2006. Docket # 34.  Defendant answered the complaint on August 17, 2006. Docket # 43. A Motion to dismiss the Second Cause of Action of the Complaint was filed on February 20, 2007. Docket # 54.  Defendants agreed to dismiss without prejudice this second cause of action in their March 1, 2007 Response to the Motion (see, Docket # 58), which the Court did. See, Docket ## 70 & 72.  TPPR filed the instant Motion for Summary Judgment on April 2, 2007. Docket # 65.  Plaintiff's opposition thereto (Docket # 107), and Defendant's reply to the response (Docket # 110) followed.

### Uncontested Facts

The Parties executed a Sub-lease agreement on September 11, 1997 where Alvarez-Espina leased a gasoline station and a convenience store from TPPR with the intent of operating them. Docket # 65 Ex. 1 ¶ 1.  The second clause of the sub-lease agreement stipulates that rent payments were due on the first day of the month. Id. at ¶ 2.  Alvarez-Espina stopped making rent payments beginning on March 2003. Id. at ¶ 3.  On August 14, 2003 TPPR commenced a collection of monies action against Alvarez-Espina in the Puerto Rico Court of First Instance, in San Juan, and on November 25, 2003 judgment was entered in favor of TPPR. Id. at ¶ 4.  The parties were notified of the judgment on December 2, 2003. Id.  TPPR also brought an eviction action against Alvarez-Espina on August 14, 2003, in the Puerto Rico Court of First Instance, in Carolina. Id. at ¶ 5.  The Court entered judgment in favor on TPPR on December 31, 2003, and notified the parties on January 21, 2004. Id. On September 2, 2003, TPPR sent Alvarez-Espina a letter, pursuant to the Petroleum Marketing Practices Act (hereinafter "PMPA"), 15 U.S.C. §§ 2801 *et seq*., notifying him of the

_____

conditional termination of the franchise agreement. Id. at ¶ 6.  On January 30, 2004 TPPR sent another certified letter, pursuant to the PMPA, to Alvarez-Espina notifying him that as a result of the eviction judgment and Alvarez-Espina's repeated breach of the contractual agreements the franchise would be terminated as of March 12, 2004 at which point Alvarez-Espina was to return the gasoline station to TPPR. Docket 18 Ex. 1 pp. 52-3. On March 19, 2004, Alvarez-Espina, delivered, through Atty. Carlos Moñes-Alvarado, a certified check to TPPR in the amount of $53,179.10. Docket # 65 Ex. 1 ¶ 7.  The check covered the missing rent payments until February 28, 2004. Id. at ¶ 8.  Alvarez-Espina made no more payments to TPPR after March 19, 2004. Id. at ¶ 12.  Alvarez-Espina was evicted from the premises on April 16, 2004. Docket # 1 p. 6 ¶ 29.

### Applicable Law and Analysis

The Court's jurisdiction in this case arises from the PMPA.  Various opinions in the First Circuit point to the legislative history of the PMPA to elucidate Congress' intent when creating the Act.   See, e.g., Veracka v. Shell Oil Co., 655 F.2d 445, 448 (1st Cir. 1981) (hereinafter "Veracka"); Esso Standard Oil Co. v. Department of Consumer Affairs, 793 F.2d 431, 432 (1st Cir. 1986); Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 25 (1st Cir. 1987) (hereinafter "Desfosses"); Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 15 (1st Cir. 2006). Thus, the First Circuit explained in Esso Standard Oil Co. v. Department of Consumer Affairs that:

> The PMPA was enacted by Congress in 1978 to protect gasoline franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises.  Congress noted that the disparity of bargaining power existing between franchisors and franchisees sometimes resulted in franchise agreements that amounted to contracts of adhesion.

Id. at 432. (citations omitted)

The Veracka Court noted that while the purpose of the PMPA was to prevent coercive or unfair franchisor practices, the fact that the exceptions in the PMPA are broad reflects "an intent to allow reasonable business judgments by franchisors." Id. at 448.  The Court also

_____

observed that Members of Congress were particularly worried about franchisors using their power to take over successful station operations thus appropriating the goodwill that the franchisee had developed.  Id.

In light of this Congressional purpose, it is not surprising that § 2802(a) was considered to be the "cutting edge" of the Act by the First Circuit in Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 940 F.2d 744, 747 (1st Cir. 1991).  This section is a general prohibition on the termination or nonrenewal of franchises.  By limiting a franchisor's ability to end the franchise relationship, and by bringing a higher level of scrutiny to termination or nonrenewal events, the Act makes the unfair appropriations that members of Congress feared more difficult to carry out.  However, by providing broad exceptions franchisors can avoid having to continue a franchise relationship even when there are good faith business reasons not to do so.

The portions of the Act relevant to the case at hand state:

Except as provided in subsection (b) of this section and section 2803 [this section applies only to trial and interim franchises] of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may–
   (1) terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise
15 U.S.C. § 2802(a);

Any franchisor may terminate any franchise (entered into or renewed on or after June 19, 1978) or may fail to renew any franchise relationship, if–
   (A) the notification requirements of section 2804 of this title are met; and
   (B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3).
15 U.S.C. § 2802(b)(1);

For the purposes of this subsection the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:
   ...
   (C)The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise is reasonable, if such event occurs during the period the franchise is in effect...
15 U.S.C. § 2802(b)(2)(C);

As used in the subsection (b)(2)(C) of this section, the term "an event which is

_____

relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as–

> ...
> (8) failure by the franchise to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled.

15 U.S.C. § 2802(c)(8);

Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship–

> (1) in the manner described in subsection (c) of this section; and
> (2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

15 U.S.C. § 2804(a);

(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section–

> (A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable

15 U.S.C. § 2804(b)(1);

Notification under this section–

> (1) shall be in writing;
> (2) shall be posted by certified mail or personally delivered to the franchisee; and
> (3) shall contain–
>> (A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;
>> (B) the date on which such termination or nonrenewal takes effect; and
>> (C) the summary statement prepared under subsection (d) of this section.

15 U.S.C. § 2804(c);

Section 2802(a) establishes the general prohibition on terminating franchise agreements, but § 2802(b)(1) provides a safety valve that allows franchisors to end the franchise relationship as long as: (1) there is ground for the termination and, (2) the notice requirement is met.  The grounds for terminating the franchise relationship in these particular circumstances rest on §§ 2802(b)(2)(C), and 2802(c)(8).  It is simply beyond debate that Defendant had grounds to terminate the franchise relationship; Plaintiff purposely failed to pay rent for over a year and, as a result, repeatedly failed to meet a material condition of the franchise relationship.  The fact that Plaintiff, at a later date, paid some or even all of the

Civil No. 04-1593(SEC)                                                                7
_____

delinquent rent does not change the fact that a material breach of the agreement had occurred.
The First Circuit has held that if a § 2802(b)(2)(C) event falls within the list provided at §
2802(c), as § 2802(c)(8) clearly does, termination is conclusively presumed to be reasonable
as a matter of law.  Desfosses, 836 F.2d at 26.  As such, the first element necessary for the
proper termination of a franchise relationship is present in this case.

        Section 2084 addresses the notice requirement for the termination of a franchise.  This
notice requirement in turn breaks down into two parts.  According to §§ 2804(a)(2), and
2804(b)(1), notice must be presented within a  specific time frame and must come in the
shape described in § 2804(c).  Since TPPR provided both termination letters through certified
mail according to the requirements of § 2804(c), and since there was ample ground to
terminate the franchise, it is the timing of the notice given to Plaintiff that is at issue here.

        The specifics of the notice requirement have been further fleshed out in various
judicial opinions.  One of the recurrent themes is how strictly franchisors must follow the
ninety (90) day warning rule.  In Loomis v. Gulf Oil Corp., 567 F.Supp. 591 (D.C.Fla.1983),
the court found that it would be unreasonable to force a franchisor to give the standard ninety
(90) days notice of the termination of the franchise relationship when the franchisee failed
to pay the franchisor in a timely manner.  In Marathon Petroleum Co. v. Pendleton, 889 F.2d
1509, (6th Cir.1989)(hereinafter "Marathon"), the court found a ten (10) day notice to be
sufficient when the franchisee had past due accounts with the franchisor.  In addition, the
Marathon court found that a franchisor's "practice of accepting late payments did not amount
to an amendment to the franchise agreement." Id. at 1512.

        The instant case is the result of Plaintiff's reprehensible behavior.  For over a year
Plaintiff voluntarily chose to withhold rent payments that amounted to over fifty-thousand
dollars.  It is disingenuous, at best, to now come before this Court in an attempt to use the
PMPA to lock the Defendant into a franchise relationship that Plaintiff constructively ended
with his actions.  Curing any harms suffered by Plaintiff because of the termination of the

_____

franchise relationship clearly falls outside of the intended purpose of the Act, and since the exceptions to the termination prohibition are broadly construed we will apply them broadly.

Much is made by Plaintiff of the September 2, 2003, and January 30, 2004 letters. However, he is mistaken as to the effect these letters have.  Neither letter creates a contractual obligation on Defendant's part since Plaintiff agreed to neither at any point in time. See, P.R. LAWS ANN. tit. 31, §§ 3371, 3375, & 3401.  In addition, even if they were to create a contractual obligation Plaintiff's interpretation of these obligations is erroneous.

Plaintiff believes that the September 2, 2003 letter gives him a seventy (70) day term after the eviction notification by the Carolina court, in which to pay the sublease payments owed. See, Docket # 107 pp. 13-14.  Thus, if he were to pay within this term the franchise relationship would continue.  This interpretation of the letter is the result of a selective reading of the text.  Plaintiff takes the last sentence of the fifth full paragraph of the letter on its own, divorced from the rest of the paragraph it is a part of.  The paragraph reads:

> If you pay the sublease payments owed, the case ends and you remain in the property. If you do not pay them, the court will order your eviction from the subleased property, in which case the existing franchise relationship between the parties will conclude. The termination of the franchise agreement will occur, if you do not pay the sublease payments owed, seventy (70) days after the Carolina Court notifies the judgment ordering your eviction.

Docket # 18 Ex. 1 p. 51. What this paragraph states is not that Plaintiff has seventy (70) days after the eviction notice in which to make payments. Rather the paragraph informs Plaintiff that once the eviction notice comes down the franchise relationship will expire in seventy (70) days.  The period Plaintiff had to pay the past-due sublease payments is the time prior to the Carolina court's judgment.  According to this paragraph, once the eviction order is issued, the fate of the franchise relationship is sealed.  Thus, this letter cannot be used to claim that Plaintiff was afforded some grace period in which to save the franchise agreement once an eviction order had been given.  The letter put Plaintiff under notice, as required by the PMPA, that the franchise agreement would end given certain conditions.  This

_____

interpretation of the September 2, 2003 letter is only strengthened by the content of the January 30, 2004 letter. In this letter, TPPR informs Alvarez-Espina of the conclusion of the franchise relationship as a result of the eviction judgment entered by the Carolina court. <u>See</u>, Docket 18 Ex. 1 p. 52. The letter gives March 12, 2004 as the effective date for the expiration of the franchise relationship, and instructs Alvarez-Espina that he will have to turn over the gas station at that point in time. <u>Id.</u> While at first view this alteration of the terms previously given in the September 2, 2003 could seem problematic, it is not so. First, as was pointed out above, the September 2, 2003 letter did not create a contract between TPPR and Alvarez-Espina, and even in the event that it did, Plaintiff was notified of the eviction judgment on January 21, 2004 (Docket # 18 Ex. 1 p. 88) and the eviction took place on April 16, 2004 (Docket # 1 p. 6 ¶ 29). Thus, more than seventy (70) days went by between the eviction judgment and the actual eviction.

Alvarez-Espina contends that there are various issues of material fact under dispute and as a result this Motion for Summary Judgment should not be granted. These issues all originate from the March 19, 2004 transaction, where Alvarez-Espina's Attorney Carlos Moñes-Alvarado delivered a certified check to TPPR in the amount of $53,179.10. Alvarez-Espina alleges that this was a payment in full and that it should have saved the franchise relationship. Defendants argue to the contrary that they informed Alvarez-Espina on more than one occasion that the funds were insufficient. These are all issues related to a possible breach of contract suit, but not to a notice suit under the PMPA. The proper way to construe the negotiations that took place between TPPR and Alvarez-Espina is that they were attempting not to save the old franchise relationship but rather to re-enter a franchise relationship. In both letters TPPR gave notice of the end of the franchise relationship given certain conditions. Those conditions all came to pass. Thus, independent of which letter is taken to be effective, the franchise relationship had ended with proper PMPA notice.

While TPPR gave Alvarez-Espina an opportunity to pay the sublease payments due

_____

prior to the eviction judgment and thus save the franchise relationship, there is no requirement under the PMPA to afford franchisees an opportunity to correct a deficiency in their performance of their obligations under the franchise contract.  The pertinent case law shows that in circumstances similar to those TPPR was presented with, the notification requirement could be relaxed significantly, to the point of almost being dispensed with altogether.  TPPR's letters (Docket # 18 Ex. 1 pp. 50-51 & 52) unequivocally terminate the franchise relationship and, as a result, fulfill TPPR's obligations towards Alvarez-Espina *vis a vis* the PMPA.  Thus, as was concluded by the First Circuit: "(w)hile the PMPA offers motor fuel franchisees broad protection, it does not aspire to safeguard them from the predictable consequences of their own errors." C.K. Smith & Co., Inc. v. Motiva Enterprises LLC., 269 F.3d 70, 78 (1st Cir. 2001).  It was perfectly predictable that not paying rent for over a year and being evicted could result in the termination of the franchise relationship.  As such, the PMPA cause of action is **DISMISSED with prejudice.**

### State-law Claims

The remainder of Plaintiff's claims are grounded on Puerto Rico law.  Exercising jurisdiction over pendent state law claims once the federal law claims are dismissed is discretional.  See, Newman v. Burgin, 930 F. 2d 955, 963-964 (1st Cir. 1991)(holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit...[and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity).  Because we have dismissed the federal law claims, we will not exercise supplemental jurisdiction over the state law claims.  Therefore, Plaintiff's claims arising from Puerto Rico law are **DISMISSED without prejudice.**

**SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of February, 2008

**Civil No. 04-1593(SEC)**                                                    11
_____

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge